# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| TOMMY'S SUPPLIES LLC<br><br>        Plaintiff,<br><br>v.<br><br>PAPILLON INK LLC,<br><br>        Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Tommy's Supplies LLC ("Tommy's Supplies"), does hereby, through its attorneys, allege as follows:

## THE PARTIES

1. Plaintiff Tommy's Supplies is a limited liability company organized and existing under the laws of the State of Connecticut, having a principal place of business at 34 Egypt Road, Unit A, Somers, CT 06071.

2. Upon information and belief, Defendant Papillon Ink LLC ("Papillon Ink"), is a limited liability company organized and existing under the law of the State of Connecticut, having a principal place of business at 118 Pearl Street, Enfield, CT 06082.

3. Upon information and belief, in 2015, Papillon Ink LLC purchased the assets of Papillon Studio Supply & Manufacturing ("Papillon Studio"). Collectively, Papillon Studio and Papillon Ink shall be referred to herein as "Papillon."

## JURISDICTION AND VENUE

4. This is a civil action for trademark infringement, false designation of origin and unfair competition under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125,

trademark infringement and unfair competiton under Connecticut common law, unfair competition and unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §§ 42-110(a) *et seq.*), and for declaratory relief under 28 U.S.C. §§ 2201 and 2202 that U.S. Trademark Application Serial No. 87039378 for STARBRITE COLORS PURE PIGMENT DISPERSION is incapable of registration and that Tommy's Supplies owns its marks STARBRITE, STARBRITE COLORS and STARBRITE COLORS GOES IN STAYS IN (Stylized) and Design. Jurisdiction is conferred upon this Court pursuant to 15 U.S.C. §§ 1119 and 1121 and 28 U.S.C. §§ 1331 and 1338. In addition, this Court has supplemental jurisdiction over all pendant claims asserted herein pursuant to 28 U.S.C. § 1367(a).

5. This Court has personal jurisdiction over Papillon Ink because Papillon Ink does business and solicits business in this judicial district and has committed acts within this judicial district giving rise to this action.

6. Tommy's Supplies does business and has a principal place of business in this judicial district. Papillon Ink does business and has a principal place of business in this judicial district, and has committed acts within this judicial district giving rise to this action. Venue is therefore proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

**FACTUAL BACKGROUND**

**I.** **Tommy's Supplies and Papillon Studio**

7. Tommy's Supplies is a well-known company within the tattoo supplies and ink industry.

8. Mr. Tommy Ringwalt Sr. ("Tommy Sr.") started the Tommy's Supplies business in the 1990s.

9. Since at least 2003, Tommy's Supplies has manufactured, advertised, promoted, sold and distributed tattoo ink under its STARBRITE mark.

10. In or around the late 1990s or early 2000s, while Tommy Sr. was still running Tommy's Supplies, he started working for Papillon Studio at the request of the owner of Papillon Studio.

11. At the time that Tommy Sr. began working at Papillon Studio, it was owned and operated by Ms. Meredith Holden.

12. While Tommy Sr. was at Papillon, he ran the Tommy's Supplies business from the same address as Papillon Studio (118 Pearl Street, Enfield, CT 06082).

13. At all relevant times, Meredith Holden was aware of, and did not object to, Tommy Sr.'s operation and involvement with Tommy's Supplies.

14. On March 27, 2003, with the full knowledge and authority of Meredith Holden and Papillon Studio, Tommy Sr. filed the application for U.S. Trademark Registration No. 2852912 for STARBRITE for "tattoo engraving ink," in Class 2 in his own name at 118 Pearl Street, Enfield, CT 06082.

15. Upon information and belief, at all relevant times it was Meredith Holden's and Papillon Studio's intent that Tommy Sr. and/or Tommy's Supplies would be the owner of the STARBRITE trademark and registration.

16. At the time that Tommy Sr. filed for U.S. Trademark Registration No. 2852912, Meredith Holden consented to Tommy's Supplies' use, ownership, and registration of the STARBRITE mark in connection with Tommy's Supplies' own tattoo inks.

17. The registration of the STARBRITE mark in Tommy Sr.'s name was part of an arrangement between Tommy Sr. and Meredith Holden for Tommy Sr. to eventually take over

3

the Papillon Studio business, including under the umbrella of his own, separate company Tommy's Supplies.

18. Eventually, however, Meredith Holden and Papillon Studio reneged on the arrangement for Tommy Sr. to take over the Papillon Studio business.

19. Tommy Sr. resigned from Papillon Studio in 2005.

**II. Tommy's Supplies Use and Ownership of the STARBRITE Marks**

20. U.S. Trademark Registration No. 2852912 for STARBRITE issued on June 15, 2004 in the name of Tommy Sr.

21. Declarations of Use and Incontestability under Sections 8 and 15 of the Lanham Act (15 U.S.C. §§ 1058 and 1065) were filed for this registration on September 10, 2010.

22. A Declaration of Use and a Renewal under Sections 8 and 9 of the Lanham Action (15 U.S.C. §§ 1058 and 1059) were filed for this registration on April 4, 2014. The prosecution history for U.S. Trademark Registration No. 2852912 is annexed hereto at **Exhibit A**.

23. U.S. Trademark Registration No. 2852912 was assigned from Tommy Sr. to Tommy's Supplies LLC on December 29, 2011, as recorded by the United States Patent and Trademark Office ("USPTO") on December 30, 2011. *See* **Exhibit B** annexed hereto.

24. The incontestable status of U.S. Trademark Registration No. 2852912 is conclusive evidence of the validity of the registered mark STARBRITE and of the registration, of Tommy's Supplies' ownership of the mark, and of Tommy's Supplies' exclusive right to use this registered mark in commerce.

25. Tommy's Supplies has continuously used STARBRITE and STARBRITE COLORS for its own tattoo inks since at least as early as 2003.

26. Tommy's Supplies used the mark STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION for its own tattoo inks from about 2003 – 2013.

27. Tommy's Supplies uses a proprietary recipe for its sterilized STARBRITE inks, which is different from the Papillon ink recipe.

28. Tommy's Supplies also owns U.S. Trademark Registration No. 4724705 for the mark STARBRITE COLORS GOES IN STAYS IN (Stylized) and Design for "tattoo inks," in Class 2, filed on November 13, 2013 and issued on April 21, 2015. The Certificate of Registration for this registration is annexed hereto at **Exhibit C**.

29. Tommy's Supplies first used the mark STARBRITE COLORS GOES IN STAYS IN (Stylized) and Design at least as early as January 2014.

30. Tommy's Supplies further owns U.S. Application Serial No. 87185677 for the mark TOMMY'S STARBRITE COLORS (Stylized) and Design for "tattoo inks; tattooing ink; tattoo engraving ink," in Class 2, filed on September 28, 2016. This application is annexed hereto at **Exhibit D**.

31. Tommy's Supplies has registrations, filed in 2012, for STARBRITE in numerous countries around the world, including the European Union, China, Australia, Singapore, Philippines, and Thailand.

32. As a result of almost fifteen years of promotion and distribution, Tommy's Supplies' STARBRITE ink is one the most popular and well-known tattoo ink brands in the United States.

33. Since at least as early as 2005, Tommy's Supplies has spent substantial sums annually advertising its STARBRITE inks.

34. Tommy's Supplies' STARBRITE inks have been advertised and promoted, among other places, in national tattoo industry magazines, on the Internet, in Internet banner ads, via the Google AdWords program, in bowling alleys across Connecticut and Massachusetts, on the radio, on a NASCAR race car, and by sponsoring events.  *See e.g.*, **Exhibit E**.

35. Since 2012, Tommy's Supplies has organized and hosted the Tommy's Tattoo Convention (the "Tommy's Convention") at the Connecticut Convention Center.

36. The turnout at the Tommy's Convention from vendors and attendees has increased each year.  For example, in 2012, there were 110 booths with tattoo artists, piercers and other vendors from all over the country, and 2,800 attendees from all over the country and world.  In October 2016, there were 164 booths with tattoo artists, piercers and other vendors from all over the country, and 3,500 attendees from all over the country and world.

37. At the Tommy's Convention, Tommy's Supplies' STARBRITE inks are advertised and sold at a prominent retail display that is separate from the other booths.

38. Tommy's Supplies' STARBRITE inks are advertised in connection with the Tommy's Convention on banners at the foregoing retail display and on the Tommy's Convention stage, in promotional materials for the Tommy's Convention, and in the Tommy's Convention program.  *See e.g.*, **Exhibit F**.

39. Upon information and belief, Papillon Studio and its long time owner, Meredith Holden, were at all relevant times aware of Tommy's Supplies' use, ownership and/or registration of STARBRITE.  For example, Meredith Holden visited the Tommy's Supplies shop in or about 2011 and 2012, attended the first Tommy's Convention, and purchased STARBRITE ink from Tommy's Supplies.

### III. Papillon's Recent Increased Promotional Efforts

40. Papillon Studio and its successor, Papillon Ink, have used and continue to use the marks STARBRITE, STARBRITE COLORS and STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION for Papillon's own tattoo inks and dyes.

41. In early 2015, Carl and Katrina Basile became involved in and eventually acquired the Papillon Studio business.

42. On information and belief, prior to the Basiles' involvement and/or ownership, Papillon Studio had generally maintained the same base of distributors and customers, and had not done a significant amount of advertising related to its STARBRITE inks and dyes.

43. Since the Basiles have become involved with Papillon, advertising efforts related to Papillon's STARBRITE inks and dyes has substantially increased, including in magazines, on the Internet, in social media, and at conventions. For example, Papillon has had, or has attempted to have, advertisements in magazines that Tommy's Supplies advertises in; Papillon now compares its STARBRITE ink to Tommy's Supplies STARBRITE ink in promotional materials (**Exhibit G**); and Papillon built a brand new website emphasizing its STARBRITE ink (**Exhibit H**).

44. Moreover, since the Basiles became involved with Papillon, they have sent letters directly to Tommy's Supplies' distributors soliciting their business and questioning Tommy's Supplies' ownership of its STARBRITE marks. *See* **Exhibit I**.

45. Papillon's advertising and promotional efforts have succeeded in causing instances of actual confusion between Tommy's Supplies' and Papillon's inks. *See e.g.,* **Exhibit J**.

46. On June 25, 2015, Papillon Studio sent a letter to Tommy's Supplies alleging trademark infringement and questioning Tommy's Supplies ownership of its STARBRITE marks. This letter demanded that Tommy's Supplies cease using its STARBRITE marks and claiming ownership of such marks. *See* **Exhibit K**.

47. Prior to Papillon Studio's June 25, 2015 letter, Papillon had not disputed Tommy's Supplies' ownership of the STARBRITE marks, nor alleged infringement, nor asserted any other claim of ownership rights of its own in the STARBRITE marks.

48. On August 25, 2015, Tommy's Supplies responded to this letter by denying Papillon Studio and Meredith Holden's claims. *See* **Exhibit L**.

49. On May 17, 2016, Papillon Ink filed U.S. Trademark Application Serial No. 87039378 for the mark STARBRITE COLORS PURE PIGMENT DISPERSION for "Tattoo colors; Tattoo dyes; Tattoo inks; Tattooing ink," in Class 2. *See* **Exhibit M**.

50. The USPTO has cited Tommy's Supplies' U.S. Trademark Registration Nos. 2852912 and 4724705 as impediments to the registration of U.S. Trademark Application Serial No. 87039378. *See id*.

51. On August 31, 2016, Papillon Ink filed with the Trademark Trial and Appeal Board a Petition to Cancel U.S. Trademark Registration Nos. 2852912 and 4724705 owned by Tommy's Supplies. *See* **Exhibit N**.

52. On October 14, 2016, Tommy's Supplies filed an Answer to this Petition to Cancel alleging that Papillon Ink is not entitled to cancellation if its U.S. trademark registrations. *See* **Exhibit O**.

53. Papillon Ink's continued use of STARBRITE, STARBRITE COLORS, STARBRITE COLORS PURE PIGMENT DISPERSION, and STARBRITE COLORS PURE

UNCUT PIGMENT DISPERSION as described above for tattoo inks and dyes is likely to create consumer confusion and mistake and to deceive consumers into the incorrect belief that Papillon Ink products are sold, sponsored by, affiliated with and/or approved by Tommy's Supplies, when they are not.

54. Upon information and belief, Papillon Ink increased its branding and promotional efforts related to STARBRITE, STARBRITE COLORS, STARBRITE COLORS PURE PIGMENT DISPERSION, and STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION with the intent to cause consumer confusion and to capitalize on Tommy Supplies' reputation and substantial goodwill in its STARBRITE marks, which reputation and goodwill was developed and built up by Tommy's Supplies over years of marketing and promotional efforts and the sale of high quality tattoo inks.

55. Papillon Ink, by the acts complained of herein, has infringed and continues to infringe Tommy's Supplies' marks, has unfairly competed and continues to unfairly compete with Tommy's Supplies in the marketplace, and otherwise has improperly capitalized on the reputation and goodwill of Tommy's Supplies to promote its own inks and dyes.

56. As a result of Papillon Ink's acts set forth herein, the relevant consuming public will likely be confused as to the source and origin of the inks and dyes sold in connection with Papillon Ink's STARBRITE marks, mistakenly associating those goods with the inks of Tommy's Supplies.

**COUNT I**
**TRADEMARK INFRINGEMENT**
**UNDER § 32(1) OF THE LANHAM ACT, 15 U.S.C § 1114(1)**

57. Tommy's Supplies repeats and realleges paragraphs 1 - 56, above, as though fully set forth herein.

58. Tommy's Supplies owns federal registrations for STARBRITE and STARBRITE COLORS GOES IN STAYS IN (Stylized) and Design for "tattoo engraving ink" and "tattoo inks" (collectively, the "Registered STARBRITE Marks").

59. On information and belief, when filing its federal application for STARBRITE COLORS PURE PIGMENT DISPERSION and using this mark, STARBRITE, STARBRITE COLORS, and STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION in the manner described herein for its inks and dyes, Papillon Ink and its owners had actual and/or constructive knowledge of Tommy's Supplies's ownership, use and registration of the Registered STARBRITE Marks.

60. Papillon Ink's acts, as set forth above, are likely to cause confusion, mistake or deception as to the source, origin or sponsorship of Papillon Ink's products and to falsely mislead consumers into believing that Papillon Ink's inks and dyes originate from, are affiliated or connected with, and/or are approved by Tommy's Supplies.

61. Accordingly, Papillon Ink's activities constitute an infringement of the Tommy's Supplies Registered STARBRITE Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114(1).

62. Papillon Ink's acts of infringement have caused Tommy's Supplies to sustain monetary damage, loss, and injury in an amount to be determined at trial, as well as damage and injury to its reputation and goodwill.

63. Papillon Ink has engaged and continues to engage in these activities willfully, so as to justify the assessment of treble damages under 15 U.S.C. § 1117.

64. Papillon Ink has wrongfully obtained and/or will wrongfully obtain profits as a result of its use of STARBRITE for its inks and dyes

65. Papillon Ink's acts of infringement, unless enjoined by this Court, will continue to cause Tommy's Supplies to sustain irreparable damage, loss, and injury for which Tommy's Supplies has no adequate remedy at law.

## COUNT II
### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER § 43(a)(1)(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A)

66. Tommy's Supplies repeats and realleges paragraphs 1 - 65, above, as though fully set forth herein.

67. Tommy's Supplies has used the following marks for tattoo ink in commerce: STARBRITE and STARBRITE COLORS since at least as early as 2003, STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION from about 2003 – 2013, and STARBRITE COLORS GOES IN STAYS IN (Stylized) and Design since at least as early as 2014.

68. On information and belief, at the time of committing the acts alleged herein, Papillon Ink and its owners had actual and/or constructive knowledge of Tommy's Supplies's ownership and use of the Registered STARBRITE Marks, STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION, and STARBRITE COLORS for tattoo ink.

69. Papillon has created and will create a false designation of origin under § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), by using in commerce the marks STARBRITE, STARBRITE COLORS, STARBRITE COLORS PURE PIGMENT DISPERSION, and STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION in association with tattoo ink and dyes.

70. These acts on the part of Papillon Ink are likely to cause confusion, mistake or deception as to the source, origin or sponsorship of Papillon Ink's goods and to falsely mislead

consumers into believing that Papillon Ink's goods originate from, are affiliated or connected with, and/or are approved by Tommy's Supplies.

71. Papillon Ink's acts of false designation of origin and unfair competition have caused Tommy's Supplies to sustain monetary damage, loss, and injury in an amount to be determined at trial, as well as damage and injury to its reputation and goodwill.

72. Papillon Ink has wrongfully obtained profits as a result of its use of STARBRITE, which should be restored to Tommy's Supplies.

73. Papillon Ink has engaged and continues to engage in these activities willfully, so as to justify the assessment of treble damages under 15 U.S.C. § 1117.

74. Papillon Ink's acts of false designation of origin and unfair competion, unless enjoined by this Court, will continue to cause Tommy's Supplies to sustain irreparable damage, loss, and injury for which Tommy's Supplies has no adequate remedy at law.

### COUNT III
### CONNECTICUT COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

75. Tommy's Supplies repeats and realleges paragraphs 1 - 74, above, as though fully set forth herein.

76. Papillon Ink's knowing, willful and intentional acts as alleged herein constitute trademark infringement and unfair competition in violation of the common law of the State of Connecticut.

77. By virtue of the aforesaid acts, Papillon Ink has attempted to and has created confusion as to the source of its products.

78. Such acts have the natural and probable tendency to deceive the public so as to essentially pass off Papillon Ink's inks and dyes as those of Tommy's Supplies.

79. As a result of Papillon Ink's aforesaid acts, ordinary buyers making purchases under ordinary conditions have and will be confused and deceived.

80. Papillon Ink's acts of trademark infringement and unfair competition have caused Tommy's Supplies to sustain monetary damage, loss, and injury in an amount to be determined at trial, as well as damage and injury to its reputation and goodwill.

81. Papillon Ink has wrongfully obtained profits as a result of its use of STARBRITE, which should be restored to Tommy's Supplies.

82. Papillon Ink's acts of infringement and unfair competition, unless enjoined by this Court, will continue to cause Tommy's Supplies to sustain irreparable damage, loss, and injury for which Tommy's Supplies has no adequate remedy at law.

## COUNT IV
## UNFAIR COMPETITION AND UNFAIR OR DECEPTIVE ACTS UNDER CONNECTICUT UNFAIR TRADE PRACTICES ACT (CUTPA), CONN. GEN. STAT. § 42-110b(a) et seq.

83. Tommy's Supplies repeats and realleges paragraphs 1 - 82, above, as though fully set forth herein.

84. Papillon Ink's aforementioned conduct constitutes unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b(a), *et seq*. in that said conduct violates or offends public policy, is unethical or unscrupulous, or is substantially injurious to consumers, competitors, or other businesspersons.

85. The actions of Papillon Ink described herein have injured and will continue to injure the goodwill, reputation, and business of Tommy's Supplies.

86. As a direct and proximate result of Papillon Ink's unfair and deceptive conduct, Tommy's Supplies has suffered and will continue to suffer damages in an amount to be determined at trial.

87. Further, by its actions, Papillon Ink has irreparably injured Tommy's Supplies, and such irreparable injury will continue unless this Court enjoins Papillon Ink.

**COUNT V**
**DECLARATORY JUDGMENT THAT PAPILLON'S U.S. TRADEMARK APPLICATION SERIAL NO. 87039378 IS INCAPABLE OF REGISTRATION UNDER 28 U.S.C. §§ 2201 and 2202**

88. Tommy's Supplies repeats and realleges paragraphs 1 - 87, above, as though fully set forth herein.

89. Papillon Ink's U.S. Trademark Application Serial No. 87039378 for STARBRITE COLORS PURE PIGMENT DISPERSION is incapable of registration because, *inter alia*, when used on or in connection with the goods listed in the application, it is likely to cause consumer confusion, mistake or deception with respect to the Tommy's Supplies' marks STARBRITE, STARBRITE COLORS and STARBRITE COLORS GOES IN STAYS IN (Stylized) and Design.

90. For these reasons, as alleged in detail herein, Tommy's Supplies believes that it would be damaged by the federal registration of STARBRITE COLORS PURE PIGMENT DISPERSION.

91. Accordingly, Tommy Supplies requests an order declaring that Papillon Ink's U.S. Trademark Application Serial No. 87039378 for STARBRITE COLORS PURE PIGMENT DISPERSION is not entitled to federal registration pursuant to 15 U.S.C. §1052(d) and 15 U.S.C. § 1063.

# COUNT VI
## DECLARATORY JUDGMENT THAT TOMMY'S SUPPLIES OWNS THE MARKS STARBRITE, STARBRITE COLORS, STARBRITE COLORS GOES IN STAYS IN (STYLIZED) AND DESIGN, AND TOMMY'S STARBRITE COLORS (STYLIZED) AND DESIGN UNDER 28 U.S.C. §§ 2201 and 2202

92. Tommy's Supplies repeats and realleges paragraphs 1 - 91, above, as though fully set forth herein.

93. By its actions as alleged herein, Papillon has created an actual and justiciable controversy under 28 U.S.C. §§ 2201 and 2202 regarding Tommy's Supplies ownership of its marks STARBRITE, STARBRITE COLORS, STARBRITE COLORS GOES IN STAYS IN (Stylized) and Design, and TOMMY'S STARBRITE COLORS (Stylized) and Design, and Tommy's Supplies ability to use such marks in connection with its products.

94. To avoid further harm and uncertainty to its marks and business, Tommy's Supplies seeks a judicial declaration that Tommy's Supplies owns STARBRITE, STARBRITE COLORS, STARBRITE COLORS GOES IN STAYS IN (Stylized) and Design, and TOMMY'S STARBRITE COLORS (Stylized) and Design.

95. Plaintiff will suffer irreparable damage to its business, STARBRITE brand, and goodwill if the existing controversy between the two companies is not resolved.

## PRAYER FOR RELIEF

WHEREFORE, Tommy's Supplies respectfully asks this Court to enter judgment against Papillon Ink, and against its successors, assigns, parents, affiliates, officers, directors, agents, servants and employees, and all persons in active concert or participation with Papillon Ink, as follows:

    A. Declare that the federally registered Tommy's Supplies trademarks STARBRITE and STARBRITE COLORS GOES IN STAYS IN (Stylized) and Design are

infringed by Papillon Ink's federal application for STARBRITE COLORS PURE PIGMENT DISPERSION and/or by Papillon Ink's continued use of one or more of the marks, STARBRITE, STARBRITE COLORS, STARBRITE COLORS PURE PIGMENT DISPERSION and STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION in commerce, in violation of the Lanham Act, 15 U.S.C. § 1114(1);

B. Declare that Papillon Ink's use in commerce of STARBRITE, STARBRITE COLORS, STARBRITE COLORS PURE PIGMENT DISPERSION, and STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION in association with tattoo ink and dye violates the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), as unfair competition and as a false designation of origin;

C. Declare that Papillon Ink's use of STARBRITE, STARBRITE COLORS, STARBRITE COLORS PURE PIGMENT DISPERSION and STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION in association with tattoo ink and dye constitutes Connecticut common law trademark infringement and unfair competition;

D. Declare that Papillon Ink's acts and practices as set forth herein constitute unfair competition unfair and/or unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110b(a) *et seq.*;

E. Preliminarily and permanently enjoin Papillon Ink from using, registering or further pursuing registration of the marks STARBRITE, STARBRITE COLORS,

STARBRITE COLORS PURE PIGMENT DISPERSION and STARBRITE COLORS PURE UNCUT PIGMENT DISPERSION;

F. Declare that Papillon Ink's acts as complained of herein shall be deemed willful, and/or that this be deemed an exceptional case pursuant to 15 U.S.C. § 1117(a) and/or CUTPA and further declare that Tommy's Supplies is entitled to treble damages;

G. Declarare that Papillon Ink's U.S. Trademark Application Serial No. 87039378 for STARBRITE COLORS PURE PIGMENT DISPERSION is not entitled to federal registration pursuant to 15 U.S.C. §§ 1052(d) and 1063 and 28 U.S.C. §§ 2201 and 2202 and order Papillon Ink to expressly this application;

H. Declare under U.S.C. §§ 2201 and 2202 that Tommy's Supplies owns its marks STARBRITE, STARBRITE COLORS, STARBRITE COLORS GOES IN STAYS IN (Stylized) and Design, and TOMMY'S STARBRITE COLORS (Stylized) and Design;

I. Award Tommy's Supplies all applicable damages to which it is entitled, including but not limited to, statutory damages, in connection with Count I for Papillon Ink's intentional and willful violation of 15 U.S.C. § 1114(1) pursuant to 15 U.S.C. § 1117;

J. Award Tommy's Supplies all applicable damages to which it is entitled, including but not limited to statutory damages, in connection with Count II for Papillon Ink's intentional and willful violation of 15 U.S.C. § 1125(a) pursuant to 15 U.S.C. § 1117;

K. Award Tommy's Supplies all applicable damages to which it is entitled, including but not limited to, statutory damages, in connection with Count IV pursuant to CUTPA;

L. Award Tommy's Supplies its costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1117, Conn. Gen. Stat. § 42-110g(d), and/or any other applicable statutory or common law provision;

M. Award any such other relief to which Tommy's Supplies is entitled under law, and any other and further relief that this Court or a jury may deem just and proper.

## DEMAND FOR JURY TRIAL

Tommy's Supplies demands a trial by jury on all issues so triable.

Date: November 21, 2016

Respectfully submitted,

/s/ Steven M. Coyle
Steven M. Coyle, Esq. (ct21039)
scoyle@cantorcolburn.com
CANTOR COLBURN LLP
20 Church Street, 22nd Floor
Hartford, CT 06103
Tel. (860) 286-2929
Fax. (860) 286-0115

*Attorney for Plaintiff*
*Tommy's Supplies LLC*